# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD PARTY SUBPOENAS | Case No. _____ |
| *Movants:* | Judge _____ |
| Idenix Pharmaceuticals LLC | ORAL ARGUMENT REQUESTED |
| 60 Hampshire Street<br>Cambridge, Massachusetts 02139 | |
| Finnegan, Henderson, Farabow, Garrett &<br>Dunner, LLP | |
| 901 New York Avenue, N.W.<br>Washington, D.C.  20001-4413<br>Telephone:  (202) 408-4000 | |
| IDENIX PHARMACEUTICALS, INC.,<br>UNIVERSITA DEGLI STUDI DI CAGLIARI,<br>CENTRE NATIONAL DE LA RECHERCHE<br>SCIENTIFIQUE and L'UNIVERSITÉ<br>MONTPELLIER II,<br><br>                              Plaintiffs,<br><br>                 v.<br><br>GILEAD SCIENCES, INC. and GILEAD<br>PHARMASSET LLC,<br><br>                       Defendants. | District of Delaware<br><br>C.A. No. 13-1987-LPS |

| | |
|---|---|
| IDENIX PHARMACEUTICALS, INC., UNIVERSITA DEGLI STUDI DI CAGLIARI, CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE and L'UNIVERSITÉ MONTPELLIER II, | District of Delaware |
| Plaintiffs, | C.A. No. 14-109-LPS |
| v. | |
| GILEAD PHARMASSET LLC, | |
| Defendant. | |
| IDENIX PHARMACEUTICALS, INC. and UNIVERSITA DEGLI STUDI DI CAGLIARI, | District of Delaware |
| Plaintiffs, | C.A. No. 14-846-LPS |
| v. | |
| GILEAD SCIENCES, INC. | |
| Defendant. | |

## MOTION TO QUASH SUBPOENAS ISSUED BY GILEAD SCIENCES, INC. TO OBTAIN DISCOVERY FROM FORMER OUTSIDE LEGAL COUNSEL FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

I.     BACKGROUND ........................................................................................................ 4

       A.     Idenix Develops Life-Saving Drugs To Treat Hepatitis C Virus ......................... 4

       B.     Finnegan Formerly Represented Idenix.................................................................. 5

       C.     AMRI Conducts Experiments For Idenix ............................................................... 5

       D.     Gilead Eschewed The Discovery Procedures Available In Canada Or The
              United Kingdom And Instead Sought Section 1782 Discovery Assistance
              From The Northern District Of New York On An Emergency Basis.................... 6

       E.     The Northern District of New York Denied Gilead's Request For
              Discovery From AMRI .......................................................................................... 7

       F.     Gilead Tried To Circumvent Discovery In The California Proceedings By
              Serving Subpoenas On AMRI And Seeking Inordinately Broad And
              Improper Discovery From AMRI .......................................................................... 7

       G.     Gilead Tried To Circumvent Discovery In The Underlying Delaware
              Proceedings By Serving Duplicative Subpoenas On AMRI And Again
              Seeking Inordinately Broad And Improper Discovery From AMRI ..................... 8

       H.     Gilead Now Tries To Circumvent Discovery In The Underlying Delaware
              Proceedings By Serving Cumulative And Duplicative Subpoenas On Dr.
              Weingarten and Finnegan And Again Seeking Inordinately Broad And
              Improper Discovery Related to AMRI .................................................................. 9

II.    APPLICABLE LAW ............................................................................................... 10

       A.     Gilead's Ability To Subpoena Discovery From Dr. Weingarten And
              Finnegan Is Limited ............................................................................................. 10

       B.     Idenix Has Standing To Join Finnegan In Moving To Quash The
              Subpoenas ............................................................................................................ 11

III.   ARGUMENT ........................................................................................................... 12

       A.     Gilead's Subpoenas Seek Testimony From Idenix's Former Counsel ................ 13

       B.     Gilead's Subpoenas Seek Highly Confidential And Privileged Information
              Belonging To Idenix As Well As Irrelevant Information ..................................... 13

       C.     Gilead's Subpoenas Seek Irrelevant Information ................................................ 16

       D.     Gilead's Newest Subpoenas Are Duplicative, Cumulative, And Harassing ....... 17

       E.     Compliance With Gilead's Subpoenas Would Be Unduly Burdensome............. 18

IV.    ORAL HEARING REQUESTED ........................................................................... 20

V.     CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. FBI,*
    198 F.R.D. 306 (D.D.C. 2000)..................................................................14

*Burlodge Ltd. v. Standex Int'l Corp.,*
    257 F.R.D. 12 (D.D.C. 2009).....................................................................10

*Doe v. United States,*
    282 F.3d 156 (2d Cir. 2002).......................................................................15

*Elliot v. Mission Tr. Servs.,*
    No. 14 C 9625, 2015 WL 1567901 (N.D. Ill. Apr. 7, 2015).....................20

*Gilead Sciences, Inc. v. Albany Molecular Research Inc,*
    No. 14-MC-56 (LEK-CFH) (N.D.N.Y. 2014) ................................. passim

*Gilead Sciences, Inc. v. Merck & Co., Inc.,*
    No. 5:13-cv-04057-BLF (N.D. Cal.) ............................................................2

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,*
    263 F.R.D. 1 (D.D.C. 2009).......................................................................18

*Hickman v. Taylor,*
    329 U.S. 495 (1947).............................................................................14, 16

*In re Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988,*
    685 F. Supp. 49 (S.D.N.Y. 1988) ..............................................................15

*In re Motion to Quash Subpoenas Directed to Albany Molecular Research, Inc.,*
    No. 1:15-mc-00037-DNH-CFH (N.D.N.Y. 2015 .............................. passim

*Judicial Watch, Inc. v. United States DOJ,*
    No. (BAH) 14-1024, 2015 WL 4602599 (D.D.C. July 31, 2015) .............14

*Mitsui Sumitomo Ins. Co. v. Carbel, LLC,*
    No. 09-21208-CIV, 2011 WL 2682958 (S.D. Fla. July 11, 2011) ...........15

*Sagebrush Solutions, LLC v. Health Mgmt. Sys., Inc.,*
    289 F.R.D. 251 (S.D. Ohio 2013) .............................................................10

1

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
    276 F.R.D. 376 (D.D.C. 2011).........................................................................11, 13

*Trs. of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*,
    266 F.R.D. 1 (D.D.C. 2010)................................................................................14

*United States v. De Yian*,
    No. 94 Cr. 719 (DLC), 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) ......................................11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)...............................................................................15, 16

*Williams v. Bridgeport Music, Inc.*,
    300 F.R.D. 120 (S.D.N.Y. 2014) .......................................................................15

*Wyoming v. United States Dep't of Agric.*,
    208 F.R.D. 449 (D.D.C. 2002).........................................................................18

**STATUTES**

28 U.S.C. § 1782.......................................................................................1, 6, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................. passim

Fed. R. Civ. P. 45 ...............................................................................10, 11, 16, 18

Idenix Pharmaceuticals LLC ("Idenix") and Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan")[1] (collectively, Movants") move this Court to quash the document and deposition subpoenas served on Finnegan by Gilead Sciences, Inc. ("Gilead"), ostensibly for use in three consolidated patent suits, *Idenix Pharmaceuticals, Inc., et al. v. Gilead Sciences, Inc., et al.*, Nos. 13-1987, 14-109, and 14-846 (D. Del.) (hereinafter, the "Delaware Proceedings"). The Delaware Proceedings are part of a dispute being litigated over the last several years between Gilead and Idenix concerning the patent rights covering certain drugs to treat the Hepatitis C virus ("HCV"). Gilead and Idenix have brought actions in many courts and tribunals to adjudicate their respective patent rights, including in Norway, the United Kingdom, Australia, Canada, and the United States. Dr. Weingarten, and his firm Finnegan, have in the past represented Idenix in connection with these disputes. In that role, Dr. Weingarten assisted in overseeing Albany Molecular Research Inc. ("AMRI") in connection with such patent lawsuits. AMRI has also been retained by Idenix directly for other research and development projects as part of Idenix's research into new drug therapies.

These subpoenas represent at least the fourth time that Gilead has tried to circumvent the orderly discovery process and obtain irrelevant, confidential, privileged, and work product information concerning AMRI. The first attempt was in 2014, when Gilead brought a last-minute application in the United States District Court for the Northern District of New York for discovery assistance under 28 U.S.C. § 1782 ("Section 1782"), seeking highly expedited discovery from AMRI for use in a Canadian lawsuit between Gilead and Idenix. *See In re*

---

[1] Finnegan was formerly counsel to Idenix, but has not represented Idenix for well over a year. Idenix has instructed Finnegan to preserve its confidential, privileged, and protected information pending a ruling by the Court. Because Finnegan has ceased to represent Idenix and has little, if any, firsthand knowledge of most of the facts cited in this motion, Idenix has prepared the present motion to quash setting forth its interests and Finnegan joins the motion to comply with its ethical responsibilities as former counsel to Idenix. Finnegan also moves to quash because the subpoenas, as discussed below, fail to allow a reasonable time to comply and impose an undue burden on Finnegan. This motion is being filed jointly to conserve judicial resources.

*Gilead Sciences, Inc. v. Albany Molecular Research, Inc.*, No. 14-MC-56 (LEK/CFH) (N.D.N.Y. 2014) (hereinafter, the "Gilead 1782 Action").  Even though Idenix had already produced the relevant materials to Gilead in Canada, Gilead brought an expedited request over the Thanksgiving holiday in 2014 to obtain discovery from AMRI just before the close of discovery in Canada.  The Court rejected Gilead's request in light of the "overwhelming evidence weighing against granting Gilead's present petition."  (Declaration of Gregory A. Castanias ("Castanias Decl.") at Ex. 1 at 17.)

The second attempt was in connection with a declaratory-judgment action brought by Gilead against Merck & Co., Inc., captioned *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 5:13-cv-04057-BLF (N.D. Cal.) (hereinafter, the "California Proceedings").  On October 13, 2015, Idenix and AMRI jointly moved to quash Gilead's subpoenas.  *In re Motion to Quash Subpoenas Directed to Albany Molecular Research, Inc.*, No. 1:15-mc-00037-DNH-CFH (N.D.N.Y. 2015) ("*In re Motion to Quash*"), Dkt. No. 1-3.  Gilead opposed the motion to quash and filed its own cross-motion to compel.  *In re Motion to Quash*, Dkt. No. 12.

The third attempt was a second set of subpoenas on AMRI seeking essentially the same documents and testimony on nearly identical topics for use in the Delaware Proceedings.  Idenix and AMRI again jointly moved to quash Gilead's document and deposition subpoenas, *In re Motion to Quash*, Dkt. No. 17, and Gilead again opposed and filed its own cross-motion to compel, Dkt. No. 28. [2]

Now, Gilead has served a nearly identical set of subpoenas on Dr. Weingarten and Finnegan, seeking essentially the same documents and testimony on nearly identical topics as its prior discovery attempts on AMRI.  (*See* Castanias Decl. at Exs. 2-9.)  Here, again, Gilead seeks

---

[2] All of the motions filed in the Northern District of New York are pending.  The briefing on all of the motions will close on December 7, 2015.

to circumvent the orderly discovery process in the Delaware Proceedings. The parties in the Delaware Proceedings stipulated that discovery (including documents and deposition testimony) produced by any party in the Delaware Proceedings or the California Proceedings can be used in either proceeding. (*See* Castanias Decl. at Ex. 11.) Gilead subpoenaed AMRI employee Dr. Alexander Clemens in the California Proceedings and sought discovery of the test results and other relevant materials relating to his Rule 26 report. That discovery has already been produced, and Gilead has already deposed Dr. Clemens. All of this discovery from the California Proceedings is available and can be used in the Delaware Proceedings. Despite this, Gilead's newest subpoenas are duplicative, cumulative, and seek to intrude upon privileged and confidential information that Dr. Weingarten and Finnegan may possess in the course of their representation of Idenix.

Gilead's subpoenas should be quashed for at least three reasons. *First*, to the extent that Dr. Weingarten or Finnegan may (or may not) possess documents or information or are aware of documents or information created in the course of Dr. Weingarten's, Finnegan's and AMRI's relationships with Idenix that has not already been produced, such information is irrelevant to the Delaware Proceedings, proprietary, privileged, and protected by the work-product doctrine.

*Second*, Gilead's duplicative subpoenas are harassing. These newest subpoenas seek essentially the same overbroad discovery as the subpoenas served on AMRI and Dr. Clemens. AMRI, Dr. Clemens, Idenix, and Merck have previously produced all relevant, non-privileged documents and information related to Gilead's requests to which Gilead is entitled, including disclosures made by Merck in the California Proceedings. By agreement of the parties, all discovery in the California Proceedings may be used in the Delaware Proceedings. Dr. Weingarten needs this Court's protection or else he, Finnegan and AMRI will continue to be

harassed by Gilead.  Further, Dr. Weingarten, Finnegan and Idenix will have to continue to

expend significant resources addressing Gilead's improper and repeated attempts to obtain

information it is not entitled to discover.

   *Third,* Gilead's subpoenas are unduly burdensome.  They seek discovery that is

duplicative of information already produced, that is not needed for the Delaware Proceedings,

and that would require Dr. Weingarten and Finnegan to expend extensive effort to respond to

Gilead's duplicative and cumulative requests.  In addition, due to the timing with the

Thanksgiving holiday weekend, the less than two weeks provided to comply with the subpoenas

is insufficient to permit even an identification and minimal review of potentially responsive

documents, let alone their production, or the preparation for the requested deposition.

## I.    BACKGROUND

### A.    Idenix Develops Life-Saving Drugs To Treat Hepatitis C Virus

   Idenix[3] is a pharmaceutical company whose primary focus is to develop drugs to treat

human viral and infectious diseases, particularly HCV.  Chronic HCV is a life-threatening

disease affecting the liver.  While those infected are often symptom-free and unaware of the

virus, chronic infections can result in liver damage or failure, liver cancer, or even death.  HCV

is the leading cause of cirrhosis and liver cancer and the most common reason for liver

transplants.

   In response to the significant and unmet global need for an effective way to treat HCV, a

team of researchers led by Jean-Pierre Sommadossi began working to try to find a treatment that

would be effective in treating HCV.  Focusing on the way that HCV replicates in the body in

order to try to find a way to stop the replication process, Dr. Sommadossi began working with 2'-

methyl substituted nucleosides/nucleotides.  He discovered compounds—known as 2'-methyl, 2'-

---

[3] In August, 2014, Idenix became a wholly-owned subsidiary of Merck & Co., Inc.

fluoro substituted nucleosides/nucleotides—that are designed to hinder replication of the virus in the body. Dr. Sommadossi co-founded a company that later became Idenix to exploit this research into potential HCV treatments involving 2'-methyl substituted nucleosides/nucleotides, including the compounds at issue in the ongoing Gilead/Idenix patent litigation.

The Idenix scientists made significant advances in this area in the early 2000s, and so did Merck. Idenix filed numerous patent applications in the United States and in various foreign countries; Merck also filed patent applications to protect its R&D in this area. After Idenix and Merck filed for their patents, Pharmasset (which was later acquired by Gilead) filed patent applications to what they argue are improvements to Idenix's and Merck's 2'-methyl technology. Gilead's patents conflict with those belonging to Merck and Idenix. These conflicting patent rights are at the heart of a host of litigation between Idenix and Gilead worldwide as well as between Gilead and Merck, including the Delaware Proceedings and the California Proceedings.

**B.     Finnegan Formerly Represented Idenix**

Dr. Weingarten and Finnegan formerly represented Idenix during the ongoing patent dispute with Gilead, including as co-counsel in the Delaware proceedings. In that role, Dr. Weingarten assisted with overseeing the engagement of AMRI on behalf of Idenix. He worked with AMRI as AMRI scientist, Dr. Alexander Clemens, conducted experiments and provided reports regarding those experiments during the course of Idenix's patent dispute with Gilead.

**C.     AMRI Conducts Experiments For Idenix**

AMRI provides contract research and manufacturing services to the pharmaceutical and biotechnology industries. (Stewart Decl.[4], ¶ 6.) Idenix has worked with AMRI on a variety of

---

[4] In the Gilead 1782 Action, Idenix submitted declarations evidencing the relevant facts. They are being resubmitted with this motion for the convenience of the Court. *See* Declaration of Alistair Stewart ("Stewart Decl."), attached to Castanias Decl. as Ex. 12; Declaration of Alastair McCulloch ("McCulloch Decl."), attached to Castanias Decl. as Ex. 13; Declaration of Alex Gloor ("Gloor Decl."), attached to Castanias Decl. as Ex. 14.

projects. (*Id.*, ¶ 7.) Many of these projects are confidential. (*Id.*) Indeed, their mere existence is sensitive business information. (*Id.*)

During the course of litigating its patent dispute with Gilead in Canada and the United Kingdom, Idenix's counsel retained AMRI to do some testing, the so-called "Deoxo-Fluor Experiment." (McCulloch Decl., ¶ 5.) In accordance with UK civil procedure, Gilead demanded an *inter partes* repetition of the Deoxo-Fluor Experiment. (*Id.*) Legal counsel and scientific experts for Gilead attended the *inter partes* testing at AMRI in Albany, New York. (McCulloch Decl., ¶ 6; Gloor Decl., ¶ 36.) After the Deoxo-Fluor Experiment was concluded, AMRI set up a data room so that counsel for both parties could access the documentation and test data. (McCulloch Decl., ¶ 8; Gloor Decl., ¶ 37. )

Following AMRI's submission of materials to the data room, there was extensive correspondence between the parties regarding the disclosure of documents relating to the Deoxo-Fluor Experiment. (McCulloch Decl., ¶¶ 9-12; Gloor Decl., ¶¶ 38-40. ) To allay Gilead's concerns, AMRI also provided information regarding "blank" HPLC runs at Gilead's request. (McCulloch Decl., ¶ 11.) Idenix confirmed on a number of occasions that full disclosure had been made. (McCulloch Decl., ¶¶ 9-12; Gloor Decl., ¶¶ 38-40.)

**D.   Gilead Eschewed The Discovery Procedures Available In Canada Or The United Kingdom And Instead Sought Section 1782 Discovery Assistance From The Northern District Of New York On An Emergency Basis**

Gilead did not formally challenge Idenix's production relating to the AMRI testing, nor did it bring any of its complaints to the courts in either Canada or the UK. (Gloor Decl., ¶¶ 41-43; McCulloch Decl., ¶¶ 9-13.) Instead, on November 17, 2014, Gilead brought an emergency request for Section 1782 discovery in the Northern District of New York, over the Thanksgiving holiday, just before the close of discovery in the Canadian action when trial was scheduled to begin two months later. Gilead 1782 Action, Dkt. No. 1.

E.   **The Northern District of New York Denied Gilead's Request For Discovery From AMRI**

The Court thoroughly considered Gilead's request for Section 1782 discovery from AMRI and denied it. Reviewing each of the applicable discretionary factors, the Court found that the discovery sought by Gilead was "well within the foreign tribunal's reach." (Castanias Decl. at Ex. 1 at 9.) The Court noted that Idenix had "already made clear that it ha[d] provided all of the relevant AMRI documents to Gilead." (*Id.* at 11.) "Accordingly, to attempt to compel further production of documents which Idenix has already represented have been disclosed is futile." (*Id.* at 11-12.) The Court also noted that Gilead had waited until just before the close of discovery to seek Section 1782 discovery. (*Id.* at 12; *see also id.* at 14.) Because Gilead had waited until nearly the close of fact discovery in Canada, producing the documents requested in such a truncated time period after the case had been pending in Canada for years is "unduly burdensome to both AMRI and Idenix." (*Id.* at 16.) This burden was compounded by the fact that Idenix had previously represented that all relevant materials had already been produced. (*Id.*) The Court concluded that "allowing for additional disclosure of documents which have already been provided is superfluous, duplicative, and unnecessary." (*Id.*) Moreover, the Court found that Gilead's requests sought "a wide array of documents, which in and of itself can be construed as overly broad." (*Id.*) The Court concluded that "to grant [Gilead's] petition to ultimately direct production of documents that Idenix has already represented, multiple times, are in the possession of Gilead, which would ultimately derail the timely completion of the litigation which has been pending for years in Canada, would be unduly burdensome to Idenix and disrespectful to the foreign tribunal." (*Id.* at 17.)

F.   **Gilead Tried To Circumvent Discovery In The California Proceedings By Serving Subpoenas On AMRI And Seeking Inordinately Broad And Improper Discovery From AMRI**

Gilead initiated the California Proceedings on August 30, 2013. *In re Motion to Quash*, Dkt. No. 1-3 at 6.  Fact discovery in that case closed on June 12, 2015, and expert discovery ended on October 16, 2015. *Id.*  Merck submitted a Rule 26 report for Dr. Clemens of AMRI, produced documents relevant to Dr. Clemens' testing, and made Dr. Clemens available for deposition. *Id.*  Notwithstanding this fully responsive disclosure, Gilead continued to pursue third-party discovery from AMRI. *Id.* at 6-7.  AMRI timely objected to Gilead's subpoenas, and attempted to negotiate with Gilead's counsel through a series of letters and telephone conferences. *Id.* at 7-8.   The parties were not able to reach a resolution. *Id.* at 8.  As a result of this impasse, on October 13, 2015, Idenix and AMRI moved to quash the subpoenas to protect AMRI from any further burden and harassment and to prevent Gilead's improper intrusion into the confidential, privileged, and/or work product materials belonging to Idenix that may be in AMRI's possession.

On October 23, 2015, Gilead responded to Idenix and AMRI's motion to quash. *In re Motion to Quash*, Dkt. No. 12.  It cross-moved to compel AMRI to comply with its subpoenas and produce documents and a witness to testify. *Id.*  Gilead also moved to transfer the pending motions to the California Proceedings for resolution. *In re Motion to Quash*, Dkt. No. 10.  The Court set the  hearing on these motions for December 17, 2015. *In re Motion to Quash*, Dkt. No. 17.

### G.     Gilead Tried To Circumvent Discovery In The Underlying Delaware Proceedings By Serving Duplicative Subpoenas On AMRI And Again Seeking Inordinately Broad And Improper Discovery From AMRI

On October 22, 2015, Gilead issued additional subpoenas on AMRI seeking documents and deposition testimony ostensibly for use in the Delaware Proceedings. (Castanias Decl. at Exs. 4-5.)  Fact discovery in the Delaware Proceedings is currently scheduled to close on December 8, 2015, the deadline for submitting rebuttal expert reports is currently set for January

26, 2016, and the deadline for submitting rebuttal expert reports is currently set for March 8,
2016. Delaware Proceedings, Dkt No. 42 at 3-4. Dr. Clemens has not yet been identified as an
expert to testify in the Delaware Proceedings, and Dr. Clemens has not prepared an expert report
in connection with the Delaware Proceedings. (Castanias Decl., ¶ 17.) On November 4, 2015,
Idenix and AMRI again moved to quash the subpoenas to protect AMRI from any further burden
and harassment and to prevent Gilead's improper intrusion into the confidential, privileged,
and/or work product materials belonging to Idenix that may be in AMRI's possession. *In re
Motion to Quash*, Dkt. No. 17. Gilead's response was filed on November 30, 2015. *In re
Motion to Quash*, Dkt. No. 28. The hearing on these motions is also set for December 17, 2015.
*In re Motion to Quash*, Dkt. No. 17.

> **H.  Gilead Now Tries To Circumvent Discovery In The Underlying Delaware
> Proceedings By Serving Cumulative And Duplicative Subpoenas On Dr.
> Weingarten And Finnegan And Again Seeking Inordinately Broad And
> Improper Discovery Related To AMRI**

In a now familiar pattern, on November 20, 2015 and November 23, 2015, the eve of the
close of fact discovery in the Delaware Proceedings and just before the Thanksgiving holiday,
Gilead served subpoenas on Finnegan and Dr. Weingarten, respectively, seeking documents and
deposition testimony related to AMRI ostensibly for use in the Delaware Proceedings.
(Castanias Decl., ¶¶ 9-12.) Gilead demanded that Finnegan respond in less than two weeks and
over the Thanksgiving holidays. Fact discovery in the Delaware Proceedings is currently
scheduled to close on December 8, 2015, the deadline for submitting rebuttal expert reports is
currently set for January 26, 2016, and the deadline for submitting rebuttal expert reports is
currently set for March 8, 2016. Delaware Proceedings, Dkt. No. 42 at 3-4.

Gilead's latest subpoenas are nearly identical in scope to the overly broad and
burdensome subpoenas that Gilead issued to AMRI in connection with the California

Proceedings. (*Compare* Castanias Decl. at Exs. 2-5 *with* Castanias Decl. at Exs. 6-9.) On

December 1, 2015, Dr. Weingarten and Finnegan served timely objections to Gilead's new

subpoenas.[5] (Castanias Decl. at Ex. 10.)

## II.   APPLICABLE LAW

### A.   Gilead's Ability To Subpoena Discovery From Dr. Weingarten And Finnegan Is Limited

The Federal Rules allow a party in litigation to subpoena discovery from third parties.

Fed. R. Civ. P. 45. However, that subpoena power is limited in several critical ways. *First*, a

party cannot subpoena privileged or other protected matter, nor can it subject a third party to

undue burden. Such a subpoena *must* be quashed: "On timely motion, the court for the district

where compliance is required must quash or modify a subpoena that: … (iii) requires disclosure

of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a

person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

*Second*, a party may not subpoena discovery that is irrelevant to the underlying litigation.

*Burlodge Ltd. v. Standex Int'l Corp.*, 257 F.R.D. 12, 18 (D.D.C. 2009) ("[I]n assessing whether a

burden is undue under Rule 45, the court should look to the standards articulated in Rule 26(b)(2)

of the Federal Rules of Civil Procedure."). Thus, a party cannot use the subpoena to "go fishing"

in a third party's files for information that has little or no bearing on the dispute being litigated in

the issuing court. *Sagebrush Solutions, LLC v. Health Mgmt. Sys., Inc.*, 289 F.R.D. 251, 253

(S.D. Ohio 2013) ("Although a plaintiff should not be denied access to information necessary to

establish [its] claim, neither may a plaintiff be permitted to 'go fishing.'").

Moreover, "the scope of discovery through a subpoena is the same as that applicable to

Rule 34 and the other discovery rules." *See* Fed. R. Civ. P. 45 Advisory Committee Notes to

---

[5] As noted in Finnegan's objections, Gilead had previously served a set of subpoenas on or about October 23, 2015; however, the subpoenas were defective on their face, lacking (for example) their respective document requests and topics.

1970 Amendment. The Court "must" limit the frequency or extent of discovery sought by

subpoena if it determines that: "(i) the discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less burdensome,

or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(c)(i); *see also Sterne Kessler*

*Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 379 (D.D.C. 2011).

    *Third*, the court is also authorized to quash a subpoena when it seeks production of "a

trade secret or other confidential research, development, or commercial information." Fed. R.

Civ. P. 45(d)(3)(B).

### B.    Idenix Has Standing To Join Finnegan In Moving To Quash The Subpoenas

    A party with a claim or interest in the subpoenaed information has standing to move to

quash a subpoena directed to third party:

> [I]n some circumstances a party has standing to quash a subpoena
> issued against a third party if it can show it has a legitimate interest.
> For example, a party has a legitimate interest in quashing a
> subpoena issued against a witness if it is "based 'upon [the party's]
> interest in preventing undue lengthening of the trial, undue
> harassment of its witness, and prejudicial over-emphasis on [the
> witness's] credibility.'" *United States v. Giampa*, 1992 WL
> 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (not reported in F. Supp.);
> *United States v. Orena*, 883 F. Supp. 849, 869 (E.D.N.Y. 1995)
> (citing *Giampa*). In addition, a party has standing if the motion to
> quash is based on "a claim of privilege or a proprietary interest in
> the subpoenaed material." *See, e.g., United States v. Reyes*, 1995
> WL 412576, at *2-*3 (S.D.N.Y. July 12, 1995) (not reported in F.
> Supp.) (citing cases).

*United States v. De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19,

1995).

    The Northern District of New York previously allowed Idenix to intervene as of right in

the Gilead 1782 Action to assert very same interests to those Idenix is asserting here. The Court

found Idenix's "interests in maintaining and protecting any confidentiality or business privileges related to its contract with AMRI provide an interest sufficient to permit intervention as of right." Gilead 1782 Action, Order, Dkt. No. 13 at 18. Moreover, the Court noted that unless Idenix was permitted to intervene, there was "no party presently involved in this matter who will adequately represent Idenix's interests." *Id.* Idenix and AMRI jointly moved to quash Gilead's subpoenas issued from the California Proceedings in this matter. *In re Motion to Quash*, Dkt. No. 1-3. Gilead did not raise any objection to Idenix's standing in its response brief. *In re Motion to Quash*, Dkt. No. 12.

Idenix's interests are even stronger with respect to Gilead's latest round of subpoenas on Dr. Weingarten and Finnegan, as the new subpoenas target former outside legal *counsel* for Idenix. Idenix has a strong legitimate interest in protecting the attorney-client and work-product privileges inherent in the documents and information possessed by Dr. Weingarten and Finnegan.

## III.   ARGUMENT

Idenix, Dr. Weingarten and Finnegan all have a very strong interest in protecting the information that Gilead seeks by its improper subpoenas directed to Dr. Weingarten and Finnegan regarding their work with AMRI. AMRI was retained by Idenix's counsel to do testing in connection with the Gilead/Idenix patent litigation as well as by Idenix directly for a number of highly confidential projects that have no relationship to the HCV patent dispute. Idenix and Merck have produced all of the discovery relating to the Deoxo-Fluor Experiment and the testimony of the AMRI scientist that ran those tests, Dr. Alexander Clemens, which is all that Gilead is potentially entitled to discover in the Delaware Proceedings, and then only if Idenix relies on Dr. Clemens' testing and testimony in those proceedings.[6] Gilead's efforts to obtain

---

[6] Dr. Weingarten and Finnegan note that they currently do not represent Idenix in its dispute with Gilead and are thus unaware of the full extent of productions made by Merck and Idenix with respect to AMRI and Dr. Clemens.

discovery from Dr. Weingarten and Finnegan related to AMRI are improper and should be quashed.

### A.   Gilead's Subpoenas Seek Testimony From Idenix's Former Counsel

"The practice of deposing opposing counsel … is generally disfavored in federal courts."
*Sterne Kessler*, 276 F.R.D. at 380.  "Allowing depositions of opposing counsel, even if these depositions were limited to relevant and non-privileged information, may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Id.* at 380-81.  Depositions also present a "unique opportunity for harassment." *Id.* at 381 (citation omitted).  For these reasons and the additional concerns regarding privilege and confidentiality detailed below, Gilead should not be allowed to depose Idenix's former counsel, Dr. Weingarten and Finnegan.

### B.   Gilead's Subpoenas Seek Highly Confidential And Privileged Information Belonging To Idenix As Well As Irrelevant Information

Gilead's subpoena seeks to discover essentially all documents related to any work that AMRI performed at the request of Idenix and its lawyers, including Dr. Weingarten and Finnegan.  There can be no question that the vast majority, if not all, of the documents and information (if any) possessed by Dr. Weingarten and Finnegan that would be responsive to Gilead's requests are protected by the attorney-client and work product privileges.  Gilead is not entitled to capture this information through third-party subpoenas.

The Court of Appeals for the District of Columbia Circuit states that the attorney-client privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c)

for the purpose of securing primarily either (i) an opinion on law or
(ii) legal services or (iii) assistance in some legal proceeding, and
not (d) for the purpose of committing a crime or tort; and (4) the
privilege has been (a) claimed and (b) not waived by the client.

*Alexander v. FBI*, 198 F.R.D. 306, 310 (D.D.C. 2000) (quoting *In re Sealed Case*, 737 F.2d 94,

98-99 (D.C. Cir. 1984)).  Further, where counsel seeks and obtains outside consulting services,

the attorney-client privilege has been extended to such third parties employed to assist a lawyer

in the rendition of legal services.  *Trs. of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr.*

*Fund Advisors, Inc.*, 266 F.R.D. 1, 8 (D.D.C. 2010) (holding that the presence of consultants at a

meeting of trustees did not cause the attorney-client privilege to be forfeited).  Each of these

criteria is facially met for communications between Idenix, Finnegan and AMRI.

To the extent that Gilead seeks to discover testing or information that might exist relating

to some litigation or consulting work other than the Delaware Proceedings, its requests are

improper, as any non attorney-client privileged documents would be protected by the work

product privilege.   The work product privilege "should be interpreted broadly and held largely

inviolate." *Judicial Watch, Inc. v. United States DOJ*, No. (BAH) 14-1024, 2015 WL 4602599,

at *4 (D.D.C. July 31, 2015) (citing *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369,

(D.C. Cir. 2005). The attorney work-product privilege traces its roots to the recognition by the

Supreme Court, in *Hickman v. Taylor*, 329 U.S. 495 (1947), which discussed the importance of

permitting "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion

by opposing parties and their counsel." *Id.* at 510-11. The Federal Rules have codified this

privilege to protect from discovery lawyers' work with non-testifying experts: "Ordinarily, a

party may not, by interrogatories or deposition, discover facts known or opinions held by an

expert who has been retained or specially employed by another party in anticipation of litigation

or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P.

14

26(b)(4)(D). Indeed, when a subpoena seeks to discover the fruits of an investigation conducted by counsel, it "is a clear violation of the attorney's work product privilege." *In re Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F. Supp. 49, 51 (S.D.N.Y. 1988) (quashing subpoena that sought details of investigation commissioned by counsel).

The facts and opinions held by a consulting expert are also protected from discovery by the work-product doctrine. *See Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123-24 (S.D.N.Y. 2014) ("Rule 26(b)(4)(D) protects disclosure of 'facts known or opinions held' by consulting experts."). Moreover, the work-product protection includes not only consulting experts, but also others who have been retained by counsel to assist in an investigation. *Doe v. United States*, 282 F.3d 156, 161 (2d Cir. 2002) ("[T]he work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information."); *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *2 (S.D. Fla. July 11, 2011) ("Work product extends beyond the lawyer's own preparation; it may be protected as long as it has been prepared in anticipation of litigation by *any* representative or agent of the party asserting the privilege.") (emphasis in original).

The work-product immunity protects both counsel's opinions and the facts relating to those opinions found in the attorney work product. Gilead bears the burden of showing a "substantial need" and an "undue hardship" before any attorney fact work product would be discoverable. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). A party seeking attorney opinion work-product must meet an even higher standard. Indeed, an attorney's mental processes are the core to be protected by the attorney work product doctrine: "Rule 26 accords special protection to work product revealing the attorney's mental processes." *Id.* Thus, "[a]s

Rule 26 and *Hickman* make clear, such [opinion] work product cannot be disclosed simply on a

showing of substantial need and inability to obtain the equivalent without undue hardship." *Id.* at

401.

Gilead can meet neither the "substantial need" and "undue hardship" standard nor the

heightened standard for opinion attorney work-product, as Gilead has *no* need for the documents

and information it seeks from Dr. Weingarten and Finnegan.  Gilead has already subpoenaed

discovery directly from Dr. Clemens.  (Castanias Decl., ¶ 16.)  Additionally, Idenix is not relying

on any testing in AMRI's possession beyond that which has already been produced in connection

with Dr. Clemens' testimony.  Thus, Gilead already possesses all relevant AMRI related

discovery Gilead could possibly seek.  As such, Gilead should not be permitted to obtain

information from Finnegan related to AMRI that is protected by attorney-client privilege or the

work-product doctrine.

Moreover, Idenix and AMRI have a longstanding relationship, and AMRI has performed

work in connection with a number of projects for Idenix.  The work that AMRI performs for

Idenix is highly confidential and proprietary.  (Stewart Decl., ¶ 7.)  Indeed, the mere existence of

those projects is very sensitive business information.  (*Id.*)  To the extent that Gilead seeks to

discover this highly confidential, proprietary information, it is irrelevant to any issue in the

Delaware Proceedings.  As Idenix could be competitively harmed by the disclosure of its

proprietary information, this provides yet another reason to quash Gilead's subpoenas.  Fed. R.

Civ. P. 45(d)(3)(B).

### C.    Gilead's Subpoenas Seek Irrelevant Information

Gilead's subpoenas are quite broad.  Gilead's requests are not restricted in time.  Indeed,

Gilead's only purported limitation asks for the testing related to "the proceedings," which is

broadly defined to sweep in a host of litigation and patent office proceedings around the world

involving Merck or Idenix and Gilead. (Castanias Decl. at Exs. 6-9.) These other proceedings have no relevance to the Delaware Proceedings. To the extent that Gilead is seeking discovery relating to Dr. Clemens' testing and expert report from the California Proceedings, that discovery has already been produced in California and can be used in the Delaware Proceedings. Anything more is simply a fishing expedition designed to intrude on Idenix's privileged and confidential relationships with Finnegan and AMRI.

**D.    Gilead's Newest Subpoenas Are Duplicative, Cumulative, And Harassing**

Gilead's newest subpoenas seek essentially the same overbroad discovery as the subpoenas previously served on AMRI in connection with the California Proceedings and the Delaware Proceedings and continues the harassing conduct they have showed with respect to AMRI and its employee, Dr. Clemens. Even though Dr. Clemens has testified by deposition in the California proceedings, Gilead has continued to harass Dr. Clemens with repeated, duplicative subpoenas seeking the same discovery that he has either already produced or has testified repeatedly he does not possess. While these duplicative and cumulative subpoenas are not the subject of this motion to quash, they are part of a disturbing pattern of Gilead's harassing and improper use of third party discovery procedures. As such, Gilead can have no legitimate purpose in issuing these further duplicative subpoenas, and, indeed, it appears that Gilead's purpose is to harass and burden Finnegan and Idenix. *See* Fed. R. Civ. P. 26(b)(2)(c)(i) (discovery must be quashed if the court determines that it is unreasonably cumulative or duplicative).

It is unclear exactly what Gilead actually wants to obtain that it has not already received in either the California Proceedings or any of the other cases pending around the world. What is clear, however, is that Dr. Weingarten, Finnegan, and Idenix need this Court's protection or Dr. Weingarten and Finnegan will continue to be harassed and Dr. Weingarten and Finnegan and

Idenix will have to continue to expend significant resources addressing Gilead's serial attempts to obtain information that it is not entitled to discover. For this reason alone, Gilead's subpoenas must be quashed.

### E.   Compliance With Gilead's Subpoenas Would Be Unduly Burdensome

The provisions of Rule 45(d)(3) are mandatory. If compliance with a subpoena would subject the respondent to undue burden, it must be quashed. "[C]ourts apply a balancing test to weigh the burden on the moving party against the need of the party seeking the deposition." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8, (D.D.C. 2009). It depends upon such factors as "factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, [and] the particularity with which the documents are described[.]" *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 453 (D.D.C. 2002*).*

Gilead's subpoenas subject Dr. Weingarten and Finnegan—not only nonparties, but former outside legal counsel—to undue burden for at least four reasons. *First*, Gilead has already received discovery relating to the Deoxo-Fluor Experiment and Dr. Clemens' testimony pursuant to its subpoenas directed to Dr. Clemens. (Castanias Decl., ¶ 16.) It has discovered whatever information it is entitled to receive for the California Proceedings. To the extent that Gilead is asking Dr. Weingarten and Finnegan to produce that same information again when the parties' agreements allow cross-use of discovery between the California and Delaware Proceedings, Gilead's request is unduly burdensome and improper.

*Second*, the subpoenas are unduly burdensome because Gilead does not need the discovery it is seeking. It already has all of the discovery it is entitled to receive with respect to Dr. Clemens' testing and expert report. Dr. Clemens has not provided an expert report for the Delaware Proceedings. (Castanias Decl., ¶17.) It is likely, given Gilead's prior arguments, that

Gilead will assert that it is entitled to discovery about the development of the protocol

Dr. Clemens used to re-create the work performed by Idenix inventor, Dr. Griffon, during the

invention of the patented drugs at issue in the Gilead/Idenix/Merck patent dispute. *In re Motion*

*to Quash*, Dkt. 12 at 2. Gilead is wrong. The real issue is whether Dr. Clemens faithfully

reproduced Dr. Griffon's work based upon the understanding of one of ordinary skill in the art

from the relevant time period. Dr. Clemens did this using the provided protocol. Neither Dr.

Clemens nor anyone at AMRI participated in the creation of the protocol. (Clemens Decl.[7], ¶¶ 8-

10.)

Gilead has had every opportunity to challenge Dr. Clemens' use of the protocol. Gilead

has known about Dr. Clemens' testing since July, 2014. (McCullough Decl., ¶ 5.) It cross-

examined Dr. Clemens on his testing and the protocol in two different trials in this global dispute.

(Castanias Decl., ¶ 18.) Gilead also cross examined Dr. Griffon twice at trial about his work.

(Castanias Decl., ¶ 19.) Gilead's experts can scrutinize the protocol and make their arguments

about whether the protocol he used was appropriate. But Gilead has no need to discover

privileged communications and attorney work product relating to the protocol that was never

provided to Dr. Clemens or AMRI before, during or after the testing was completed. Finnegan

should not be burdened by Gilead's duplicative and cumulative requests for discovery it does not

really need.

*Third*, the timing of Gilead's subpoenas create an undue burden on Dr. Weingarten and

Finnegan. While Gilead has known about experiments performed by AMRI since at least July of

2014. (McCullough Decl., ¶ 5.) Gilead waited to file its subpoenas on Dr. Weingarten and

Finnegan until November 20, 2015 and November 23, 2015 with return dates for the production

---

[7] In *In re Motion to Quash*, Idenix submitted a Declaration of Dr. Clemens, it is being resubmitted with this motion for the convenience of the Court. *See* Declaration of Dr. Alexander Clemens ("Clemens Decl."), attached to Castanias Decl. as Ex. 15.

of documents of December 2, 2015 and deposition dates of December 4, 2015 (Castanias Decl. at Exs. 6-9.) It is unduly burdensome to give Finnegan less than two weeks to respond to subpoenas for production and prepare for depositions—particularly when the highly expedited response period falls over the Thanksgiving holiday—when Gilead had over 15 months to determine the "need" for its subpoenas. In circumstances like this, the subpoena should be quashed. *See, e.g., Elliot v. Mission Tr. Servs.*, No. 14 C 9625, 2015 WL 1567901, at *4 (N.D. Ill. Apr. 7, 2015) (finding subpoena that demanded compliance in 10 days, particularly when the respondent was on a family vacation during the response period, was unreasonable and quashing subpoena).

*Fourth*, Gilead's overly-broad subpoenas would require Dr. Weingarten and Finnegan to undertake extensive review of their files, carefully locate and track all tasks they have completed for Merck and Idenix related to AMRI to determine the purpose and the history of each project, and complete a complicated privilege analysis for each. All of this work is entirely unnecessary because the data relevant to Dr. Clemens' opinions has already been produced. Putting Dr. Weingarten and Finnegan to this task when all or nearly all of it is not discoverable or relevant imposes an unnecessary and wasteful burden with no real benefit.

## IV.     ORAL HEARING REQUESTED

Gilead's multiple subpoenas present complicated issues. The underlying merits litigation in the Delaware and California Proceedings as well as the worldwide Gilead/Idenix patent dispute have a long and complicated history. Movants submit that oral argument on the merits would greatly assist this Court in ruling on their motions to quash and request that the Court schedule oral argument on the issues presented.

## V.   CONCLUSION

For all of these reasons, Idenix and Finnegan respectfully request that this Court quash

Gilead's subpoenas directed to Finnegan.

Dated: December 3, 2015                Respectfully submitted,


By: _____
    Gregory A. Castanias (DC Bar #441129)
    JONES DAY
    51 Louisiana Ave., N.W.
    Washington, D.C. 20001
    Telephone: (202) 879-3939
    Facsimile: (202) 626-1700
    Email: gcastanias@jonesday.com

    *Attorney for Movant*
    *Idenix Pharmaceuticals, Inc.*


By:  (Signature Page Attached)
    Patrick J. Coyne (DC Bar # 366841)
    *FINNEGAN, HENDERSON, FARABOW,*
    *GARRETT & DUNNER, LLP*
    901 New York Avenue, N.W.
    Washington, D.C. 20001- 4413
    Telephone:  (202) 408-4470
    Facsimile: (202) 408-4400
    Email: patrick.coyne@finnegan.com

    *Attorney for Movant*
    *Finnegan, Henderson, Farabow, Garrett &*
    *Dunner, LLP*

21

By: _____

Patrick J. Coyne
*FINNEGAN, HENDERSON, FARABOW,*
*GARRETT & DUNNER, LLP*
901 New York Avenue, N.W.
Washington, D.C. 20001- 4413
Telephone:  (202) 408-4470

*Attorney for Movant*
*Finnegan, Henderson, Farabow, Garrett &*
*Dunner, LLP*

## CERTIFICATE OF SERVICE

On December 3, 2015, a copy of the foregoing MOTION TO QUASH SUBPOENAS

ISSUED BY GILEAD SCIENCES, INC. TO OBTAIN DISCOVERY FROM FORMER

OUTSIDE LEGAL COUNSEL FINNEGAN, HENDERSON, FARABOW, GARRETT &

DUNNER, LLP was filed manually with the Court.  Counsel of record were served by overnight

mail to:

> Douglass McCann
> Elizabeth Flanagan
> Kelly Del Dotto
> Fish and Richardson
> 222 Delaware Avenue
> 17th Floor
> PO Box 1114
> Wilmington, DC  19899-1114

And courtesy copies were served by email to:

> dmccann@fr.com
> eflanagan@fr.com
> allenspach.del.cotto@fr.com

Gregory A. Castanias (DC Bar #441129)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: gcastanias@jonesday.com

*Counsel for Idenix Pharmaceuticals, Inc.*